*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 5, 2020

**BY CM/ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Edgardo Baranco*, S2 20 Cr. 135 (JMF)

Dear Judge Furman:

    The Government writes to oppose defendant Edgardo Baranco's recent request for a bail modification to allow for time outside of his home, for at least one hour per day, seven days per week, for "some exercise and fresh air." Dkt. 132. The defendant's current bail conditions—which include home incarceration—were already determined by U.S. Magistrate Judge Cave to be the least restrictive means possible to ensure the safety of the community and the appearance of the defendant in court. Granting the defendant carte blanche to wander his neighborhood on a daily basis would endanger the community and undermine the efficacy of the existing bail conditions calibrated to protect the safety of the community and assure the defendant's appearance in court. Because the request is unsupported by the bail factors and is not mandated by the Eighth Amendment, the defendant's motion should be denied.

### I. Factual and Procedural Background

    The defendant is charged with participating in the Black Stone Gorilla Gang ("BSGG"), a violent Bloods street gang that has been operating in the New York City metropolitan area and the jails and prisons of New York State since at least 2011. At trial, the Government will prove that BSGG members have been responsible for numerous acts of violence, including at least two murders, six attempted murders, five slashings, three armed robberies, and dozens of physical assaults. Former BSGG members will testify at trial that violence is firmly rooted into BSGG's culture. BSGG members committed acts of violence to join the gang and move up in status within the gang. BSGG members also committed acts of violence against each other as a form of discipline for violating the rules of the gang. The violent nature of BSGG is underscored by the fact that the Government seized six guns in connection with the arrests in this case.

    BSGG members also committed serious crimes to make money. Members of BSGG sold massive quantities of crack cocaine, powder cocaine, heroin, and other dangerous drugs in New York City and locations outside of New York City. They used and carried guns in support of the

gang's drug operations.  Members of the gang also made thousands of dollars by defrauding financial institutions, depositing stolen and counterfeit checks into bank accounts controlled by members of the scheme.  BSGG members were required to pay "kitty dues"—a form of tribute— to higher-ranking members of the gang and BSGG members who were in prison.

The S2 20 Cr. 135 Indictment charges 15 members and associates of the Black Stone Gorilla Gang with a variety of criminal offenses.  The defendant is charged with participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) (Count One); participating in a narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), (b)(1)(C), and (b)(1)(D) (Count Ten); and using a firearm in furtherance of the narcotics conspiracy, in violation of Title 18, United States Code, Section 924(c) (Count Eleven).

### A. Defendant's Arrest and Initial Presentment

The defendant was arrested on March 18, 2020, and consented to detention without prejudice.  On March 24, 2020, the defendant made a bail application before U.S. Magistrate Judge Cave.  The Government sought continued detention and Pretrial Services recommended home incarceration enforced by location monitoring.  As the Government set forth at the bail hearing, the evidence at trial will show that the defendant has been a key member of BSGG since at least 2015.  On a regular basis, the defendant sold drugs and carried guns on behalf of members of the gang.  The defendant also participated in bank fraud by recruiting other members of the gang and their associates to use their bank accounts for depositing stolen and counterfeit checks.  The defendant was involved in acts of violence on behalf of the gang, including brutal assaults, obtaining guns for members of the gang, and a conspiracy to rob a drug dealer in or around December 2018.  When the robbery was unsuccessful, the defendant and other members of the gang brutally assaulted the gang member they considered responsible for the plan's failure.

The evidence against the defendant is very strong.  It includes controlled buys of narcotics from the defendant in the heart of BSGG territory, cooperator testimony about the defendant's participation in the charged crimes, social media evidence about narcotics, fraud, and the defendant supplying other gang members with guns, and videos of the defendant committing brutal assaults with other gang members.  Although the defendant has no prior criminal convictions, he has several prior drug arrests in BSGG territory.

Following the bail hearing, Magistrate Judge Cave ordered the defendant released to home incarceration and other standard bail conditions, including a personal recognizance bond cosigned by two financially responsible persons.  The defendant was released on March 31, 2020.  On June 3, 2020, the defendant filed the present motion for a bail modification.

### II. Applicable Law

Generally speaking, a defendant must be detained pending trial if the Government can show by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  A defendant must be detained if no condition or combination of conditions can "reasonably assure the appearance of the person as required and the

safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In making this determination, the Court must consider: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves…a…firearm;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C § 3142(g).

In this case, however, the defendant is charged with two separate offenses, each of which provides for a rebuttable presumption in favor of detention under the Bail Reform Act: (1) an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more, *see* 18 U.S.C. § 3142(e)(3)(A); and (2) an offense under 18 U.S.C. § 924(c), *see* 18 U.S.C. § 3142(e)(3)(B). Even when a defendant "has met his burden of production" to rebut the presumption favoring detention, that presumption "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States* v. *Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (reversing bail and denying release of defendants involved in conspiracy to commit a single armed drug robbery, which never came to fruition).

### III.    Discussion

The defendant's present motion for a bail modification should be denied for two primary reasons.

*First*, granting the motion would present a serious danger to the community and create a risk of the defendant's flight. Judge Cave imposed a condition of home incarceration for a reason: as set forth above, the charges are serious, the defendant's conduct within the gang was violent and dangerous, and the evidence against the defendant is strong. In light of that, it is simply untenable to grant the defendant a blank check to roam his neighborhood every day, in what would amount to an hour every single day to do what he pleases and with whomever he pleases, as long as it is within his neighborhood. The unspecific nature of the request further compounds the problems with it—there is no commitment a certain type of exercise, or to exercise at a particular time of day or in a particular place or with only certain particular people. But even if the request were made more specific, that would not resolve the danger. Prior to his arrest, the defendant enjoyed the fresh air by selling drugs with other BSGG members in front of 3063 Hull Avenue— a residential building that served as a hub of BSGG criminal activity. Location monitoring would not provide adequate or effective oversight of the defendant's activity or guarantee that he did not use the time to sell drugs, handle guns, commit fraud, meet with other BSGG members, or otherwise engage in criminal activity—all location monitoring would do is tell pretrial services *where* the defendant is, not what he is doing and with whom. That is among the reasons that Pretrial Services similarly opposes this request.

Home incarceration is the strictest species of pretrial release, a necessary measure for defendants, like Baranco, who would pose a risk to the community if permitted to come and go from their homes. Relaxing that restriction, even for an hour, would erode the bail conditions and allow the defendant to evade the supervision already deemed necessary. Although the defendant claims his request is necessary to his mental health, he fails entirely to address how the proposed

Hon. Jesse M. Furman                                                                                                       Page 4
June 5, 2020

condition would satisfy the bail factors or could be carried out in a way consistent with Judge Cave's prior determinations about the defendant's danger to the community.

*Second*, the bail modification request is not constitutionally required. The defendant cites *Williams v. Goord*, 111 F. Supp. 2d 280, 292 (S.D.N.Y. 2000), for the proposition that exercise is a "basic human need[] protected by the Eighth Amendment." But that case involved far more extreme circumstances, and held that there were triable issues about a possible Eighth Amendment violation where an incarcerated defendant was kept in mechanical restraints in an exercise cage. It said nothing about a right to outdoor exercise, particularly in the context of a defendant on pretrial release who has freedom of movement within his own home and who is not in the custody of the BOP.[1] Moreover, while it may be possible to provide outdoor exercise in custody "without interference with security," *Frazier v. Ward*, 426 F. Supp. 1354, 1369 (N.D.N.Y. 1977), the same cannot be said for the defendant's generalized request to be permitted outside every day with no constraint other than location monitoring. And unlike in prison, the defendant is free to exercise for whatever length of time he wants within the four walls of his home. To the extent he is struggling with his mental health, there are other remedies, such as a referral for mental health treatment. The Government has spoken with Pretrial Services, which is amenable to a mental health treatment condition being added to the defendant's supervision (currently, mental health treatment is being conducted through telehealth). As of now, however, the defendant cites no documented medical issue that would mandate some form of exercise that cannot be completed from home.

---

[1] The defendant also relies on *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979). In that case, the Ninth Circuit declined to hold that deprivation of outdoor exercise to prisoners is a per se violation of the Eighth Amendment. *Id.* at 199. There, the Eighth Amendment violation included denial of fresh air and outdoor exercise on top of other conditions, such as the use of painful and dangerous tear gas and the use of neck chains on prisoners during out-of-cell movements for a period of more than four-and-a-half years.

Hon. Jesse M. Furman  Page 5
June 5, 2020

\* \* \* \* \*

  For the reasons set forth above, the Government respectfully submits that the Court should deny the defendant's request for a bail modification.

              Respectfully submitted,

              GEOFFREY S. BERMAN
              United States Attorney

       By:  /s/ Danielle R. Sassoon
              Danielle R. Sassoon / Andrew K. Chan
              Brandon Harper / Jaclyn S. Wood (SAUSA)
              Assistant United States Attorneys
              Southern District of New York
              (212) 637-1115 / 1072 / 2209

cc:  Counsel of record (by CM/ECF)